**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VIVIAN & VINCENT INTERNATIONAL TRADING
COMPANY LTD; and COMPLUS ELECTRONICS &
INFORMATION COMPANY LTD.,

        Plaintiffs,

  v.                  1:25-cv-519 (AMN/DJS)

DENEHAN INC.; MEL G. DENEHAN; and MICHAEL A.
WALLACE,

        Defendants.

---

APPEARANCES:        OF COUNSEL:

**ALLEGAERT BERGER & VOGEL LLP**   **BIANCA LIN, ESQ.**
111 Broadway, 20th Floor
New York, NY 10006
*Attorneys for Plaintiffs*

**BOND, SCHOENECK & KING, PLLC**   **ERIC M. O'BRYAN, ESQ.**
22 Corporate Woods Blvd., Suite 501
Albany, NY 12211
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On April 28, 2025, Plaintiffs Vivian & Vincent International Trading Company Ltd. ("V&V") and ComPLUS Electronics & Information Company Ltd. ("ComPLUS") (collectively, "Plaintiffs") commenced this suit against Defendants Denehan Inc. ("Denehan"), Mel G. Denehan ("Mel Denehan") and Michael A. Wallace ("Wallace") (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiffs raise common law claims for fraud, conversion, breach of contract, and unjust enrichment arising from Defendants' failure to facilitate Plaintiffs' purchase of $10,402,700

1

worth of specialized products from Honeywell International Inc. ("Honeywell"). *Id.* at ¶ 1. Plaintiffs seek compensatory damages, lost profits, interest, and punitive damages. *Id.* at 11-12.

Presently before the Court is Defendants' partial motion to dismiss (the "Motion"). Dkt. No. 15-1; *see also* Dkt No. 16. For the reasons that follow, the Court denies the Motion in part and grants it in part.

## II.     BACKGROUND

### A.  The Parties

V&V is a Taiwan corporation with its principal place of business in Taiwan. Dkt. No. 1 at ¶ 8. ComPLUS, a V&V affiliate, is also a Taiwan corporation with its principal place of business in Taiwan. *Id.* at ¶ 9.

Denehan is a New York corporation with its principal place of business in New York. *Id.* at ¶ 10. Mel Denehan is a citizen of New York and is the Chairman and Managing Director of Denehan. *Id.* at ¶ 11. Wallace is a citizen of New York and is the General Manager of Denehan. *Id.* at ¶ 12.

### B.  Plaintiffs' Factual Allegations

Plaintiffs' claims arise out of certain transactions occurring as part of a "longstanding relationship" between Denehan and V&V, pursuant to which Denehan had facilitated United States-based purchases for Taiwan-based V&V. *See id.* at ¶ 13.

In the first transaction, Plaintiffs allege that Denehan requested a $30,000 advance from V&V, "to be either credited toward orders V&V placed with Denehan [] or refunded by June 30, 2023." *Id.* at ¶ 14. Plaintiffs allege that V&V advanced the requested $30,000 in or around May 2023, and that since then, $22,600 of that amount (the "Advance Payment") "was not credited toward orders placed by V&V and therefore was due to be refunded by June 30, 2023." *Id.*

However, Plaintiffs allege that Denehan has yet to refund the Advance Payment despite V&V's demand. *Id.*

In the second transaction, Plaintiffs allege a failed attempt to purchase 110 units of Honeywell's "gTalin 300 Inertial Land Navigators with Polaris Commercial GPS" (the "Product"). *Id.* at ¶ 15. Specifically, Plaintiffs allege that Defendants contacted Plaintiffs to help assist in procuring the Product to fulfill Plaintiffs' contractual obligations with the National Chung-Shan Institute of Science and Technology ("NCSIST") in Taiwan. *Id.* After Defendants secured a letter from Honeywell with "valid and official quotes for the Product," Plaintiffs allege that Denehan "issued Invoice No. INV-8691 to V&V [] for 110 units of the product" on or about April 8, 2024, and that the invoice "stated that 'Honeywell requires 10% deposit' and accordingly listed the amount due as $1,040,270.00." *Id.* at ¶¶ 16-17. The invoice also stated that the agreed commission was $6,000 per unit of the Product and that an initial consulting commission of $33,000 (the "Consulting Commission") was due. *Id.* at ¶ 18.

Plaintiffs allege that on or about April 15, 2024, V&V, on behalf of itself and ComPLUS, sent Purchase Order No. PO15042401A-AY (the "Purchase Order") to Denehan. *Id.* at ¶ 19. Plaintiffs allege that Mel Denehan countersigned the Purchase Order on April 16, 2024, and returned it to V&V via email, copying Wallace. *Id.* at ¶ 20. In that email, Mel Denehan "stated that '[w]e will the place the order with Honeywell along with the deposit once we have received the funds' and further noted that 'Honeywell's terms are 10% deposit and full Payment from V&V due before shipping on partial quantities.'" *Id.* at ¶ 20.

On or around April 18, 2024, Plaintiff V&V wire transferred $1,073,270 to Denehan's bank account—$1,040,270 for the 10% deposit and $33,000 for the Consulting Commission. *Id.* at ¶ 21. V&V received a document from Defendants on or about May 23, 2024, titled "Order

3

Acknowledgment 552019117." *Id.* at ¶ 22. Plaintiffs state that the document bore Honeywell's letterhead, purported to confirm the order for 110 units of the Product, acknowledged receipt of the "10% Deposit," and showed $9,362,430 as the remaining balance due. *Id.*

Plaintiffs allege that they subsequently made repeated requests for Denehan to provide confirmation from Honeywell that the order would ship by August 19, 2024. *Id.* at ¶ 23. On or about August 7, 2024, Denehan sent V&V and ComPLUS each an assurance letter regarding delivery. *Id.* at ¶ 24. Each letter was "on Denehan[]'s letterhead, signed by Mel Denehan as Managing Director, and notarized by Wallace." *Id.*

Plaintiffs allege that Defendants never provided a shipment from Honeywell and that Plaintiffs never received any Product. *Id.* at ¶ 25. Instead, on or about August 23, 2024, Mel Denehan forwarded Plaintiffs "a purported notice from Honeywell canceling the Order" without cause. *Id.* at ¶ 26. Mel Denehan asserted in the email that Honeywell had sent multiple letters "confirming appointment and delivery" up until August 18, 2024, and that "we intend to pursue legal action against Honeywell immediately." *Id.* (internal quotation marks omitted). However, Plaintiffs allege that Defendants have not taken any legal action against Honeywell. *Id.* at ¶ 27.

Plaintiffs allege that V&V made multiple requests for the return of the 10% deposit. *Id.* at ¶ 28. But Mel Denehan, in a phone call with V&V General Manager Kevin Hsu, admitted that instead of transferring the $1,040,270 deposit to Honeywell, Denehan "used the funds for other purposes due to certain financial difficulties." *Id.* Plaintiffs state that Denehan's use of the deposit was without V&V's knowledge or authorization. *Id.* Furthermore, Plaintiffs allege that Honeywell later informed V&V that "it neither requested nor received the $1,040,270 Deposit for the Order." *Id.* at ¶ 31.

As to their injuries, Plaintiffs allege that Defendants have yet to pay back the $1,040,270 deposit, the $33,000 Consulting Commission, and the remaining $22,600 Advance Payment.  *Id.* at ¶ 30.  Plaintiffs also allege that Defendants caused Plaintiffs to fail in their contractual obligations to NCSIST, resulting in the termination of Plaintiffs' contractual relationship with NCSIST, the imposition of a $86,090 penalty against V&V and a $76,870 penalty against ComPLUS, and the loss of approximately $700 million in projected future contracts with NCSIST. *Id.* at ¶ 32.

### C.  Plaintiffs' Claims

Plaintiffs bring state law claims for fraud and conversion against all Defendants.  *Id.* at ¶¶ 33-45.  V&V also pleads a separate breach of contract claim against Denehan relating to the Advance Payment.  *Id.* at ¶¶ 51-55.  In the alternative, V&V pleads one breach of contract claim against Denehan relating to the Purchase Order and one claim for unjust enrichment against all Defendants.  *Id.* at ¶¶ 46-50, 56-61.

### D.  Defendants' Motion

In the Motion, Defendants argue that this Court should dismiss Plaintiffs' claim for fraud because Plaintiffs have not pled their fraud claim with the requisite particularity under Federal Rule of Civil Procedure 9(b).  Dkt. No. 15-1 at 8-11.  Defendants also argue that Plaintiffs' claim for conversion and V&V's claim for unjust enrichment should be dismissed as duplicative of V&V's breach of contract claims.  *Id.* at 15-17.  Finally, Defendants argue that each of Plaintiffs' claims against Mel Denehan and Wallace should be dismissed because these individual defendants cannot be held personally liable for the actions of Denehan.  *Id.* at 6-8, 11-14.

### III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (internal quotation marks omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face."  *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

6

IV.    **DISCUSSION**[1]

    A. **Fraud**

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 280-81 (S.D.N.Y. 2021).

A common law fraud claim is subject to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a claim for fraud "state with particularity the circumstances constituting fraud." The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted). In addition, the Second Circuit requires plaintiffs "'to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). "Such a 'strong inference' can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Valcarel*, 577 F. Supp. 3d at 281 (citations and internal quotations omitted).

---

[1] The parties agree that New York substantive law applies to all of Plaintiffs' claims and the Court thus analyzes these claims under New York law. *See* Dkt. No. 15-1 at 11-13, 16, 18, 20-22; Dkt. No. 16 at 11, 14-15, 17, 18, 20.

The Court finds that Plaintiffs have pled their fraud claim with the requisite particularity. Plaintiffs specifically allege that Denehan represented across multiple documented communications to V&V that Honeywell required a 10% deposit to effectuate Plaintiffs' order and that Honeywell had received the 10% deposit that V&V transferred to Denehan. Dkt. No. 1 at ¶¶ 17, 20, 22. Plaintiffs further allege that Mel Denehan subsequently admitted that Denehan had not in fact sent the deposit amount to Honeywell but instead "used the funds for other purposes due to certain financial difficulties." *Id.* at ¶ 28. Plaintiffs finally allege that Honeywell itself never requested the deposit or received it. *Id.* at ¶ 31. Thus, Plaintiffs allege with particularity that Defendants fraudulently misrepresented a contractual term—the 10% deposit purportedly required by Honeywell—and falsified the Honeywell order acknowledgement that they sent to Plaintiffs on May 23, 2024. *See id.* at ¶¶ 17-19, 22; 28; 31. These allegations raise a sufficiently strong inference of fraudulent intent and, indeed, Mel Denehan's alleged admission regarding Denehan's unauthorized use of the funds constitutes strong circumstantial evidence of conscious misbehavior. The Court therefore finds that Plaintiffs have adequately pled their claim for fraud.

Defendants also argue that Plaintiffs are attempting to improperly "shoehorn" the allegations underlying their breach of contract claim into a fraud claim. Dkt. No. 15-1 at 15. A plaintiff who brings both a breach of contract claim and a fraud claim must distinguish between the two claims by (1) showing a legal duty separate from the duty to perform under the contract, (2) showing fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages. *Xiotech Corp. v. Express Data Products Corp.* 11 F. Supp. 3d 225, 241 (N.D.N.Y. 2014) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,* 98 F.3d 13, 19-20 (2d Cir. 1996)). "For a fraudulent misrepresentation to be collateral or extraneous to a contract, it must be a promise to do

something other than what is expressly required by the contract." *W.B. David & Co., Inc. v. DWA Comm's, Inc.*, No. 02 Civ. 8479 (BSJ), 2004 WL 369147, at \*5 (S.D.N.Y. Feb. 26, 2004) (citing *Frontier–Kemper Constructors, Inc. v. Flatiron Constructors, LLC,* 224 F. Supp. 2d 520, 528 (W.D.N.Y.2002)) (other citation omitted).  "A plaintiff may . . . pursue a claim [for] fraudulent inducement of a contract, based upon a misrepresentation of present fact, or upon a false promise to do something besides what is required by the contract." *Frontier-Kemper*, 224 F. Supp. 2d at 529.

Here, Plaintiffs have plausibly alleged facts demonstrating misrepresentation collateral to the contract because they allege that Denehan fraudulently misrepresented that Honeywell required that Plaintiffs pay a 10% deposit.  Dkt. No. 1 at ¶ 17, 20, 31.  In other words, in support of their claim for fraud, Plaintiffs allege that Defendants misrepresented a then-present fact—that Honeywell required a 10% deposit—which induced Plaintiffs to agree to and provide a false deposit.  Then, Defendants fraudulently used the funds they received as result of that collateral misrepresentation for other purposes.  *Id.* at ¶ 28.  These allegations are distinct from Plaintiffs' breach of contract claim, in which they merely allege that Defendants failed to fulfill their obligations under the Purchase Order.  *See* Dkt. No. 1 at ¶¶ 47-49.  Therefore, the Court finds that Plaintiffs' claims for fraud and for breach of contract are not duplicative and denies Defendants' Motion as to Plaintiffs' claim for fraud.

### B.  Conversion

New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).  To state a claim for conversion, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2)

plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Haraden Motorcar Corp. v. Bonarrigo*, No. 1:19-cv-01079 (BKS/DJS), 2020 WL 1915125, at *9 (N.D.N.Y. Apr. 20, 2020).

If the property in question is money, it "must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Goldberg v. Gray*, No. 5:15-CV-0538, 2016 WL 4099189, at *11 (N.D.N.Y. Aug. 2, 2016). And if the defendant originally possessed the property lawfully, "a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property. *Id.*

However, even if a plaintiff meets all the elements of a conversion claim, he still cannot validly maintain such a claim based only on factual allegations relating to a breach of contract. *Flatsher v. Manhattan Sch. of Music*, 551 F. Supp. 3d 273, 288 (S.D.N.Y. 2021). Thus, when a conversion claim overlaps with a breach of contract claim, a plaintiff must show that the conversion involves unlawful or wrongful acts distinct from mere violations of contractual rights. *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 327 (S.D.N.Y. 2010).

Here, the Court finds that Plaintiffs plausibly allege that their conversion claim overlaps with the alleged facts supporting their claim for fraud, not their claim for breach of contract. Plaintiffs have plausibly alleged that Denehan wrongfully misrepresented a term required for Plaintiff's purchase from Honeywell. Dkt. No. 1 at ¶¶ 17, 20, 31. Plaintiffs duly sent the specific, discrete sum of $1,040,270 to Denehan's bank account for the purpose of fulfilling that supposed term. *Id.* at ¶ 21. Plaintiffs then plausibly allege that Denehan exercised unauthorized dominion over that money because they allege that Mel Denehan admitted in a phone call that Defendant

Denehan "used those funds for other purposes" rather than for the purpose that Plaintiff had authorized. *Id.* at ¶ 28.

As with Plaintiffs' fraud claim, these allegations are distinct from Plaintiffs' breach of contract claim. *See* Dkt. No. 1 at ¶¶ 47-49. Thus, at this stage, the Court denies Defendants' Motion with respect to Plaintiffs' claim for conversion.

### C. Unjust Enrichment

"Unjust enrichment is a quasi-contract claim viable only in the absence of an enforceable agreement between the parties governing the subject matter of the dispute." *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) (citation omitted). Under New York law, to prevail on a claim for unjust enrichment, a plaintiff must establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted). "While an unjust enrichment claim may be premised on deceptive conduct, 'unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020) (citation omitted).

Several district courts in this Circuit have allowed an unjust enrichment claim to proceed where the parties disputed the enforceability of an alleged contract. *See, e.g.*, *St. John's Univ.*, 757 F. Supp. 2d at 184-85 ("dismissal of unjust enrichment claims is inappropriate where there is a genuine dispute over the alleged contract") (citations omitted); *see also Rothstein v. Auto Club S.*, No. 15-cv-9391 (LAK) (RLE), 2017 WL 11455316, at *4 (S.D.N.Y. Mar. 16, 2017) (declining to

dismiss unjust enrichment claim at the motion to dismiss stage where there was a dispute as to whether a valid contract existed).

Here, however, Plaintiffs have not alleged any dispute over the validity of the contract.[2] Thus, because V&V's unjust enrichment claim is based on the same factual allegations as its breach of contract claim, the Court dismisses the unjust enrichment claim. *See, e.g.*, *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012) ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiff's other claims are defective, an unjust enrichment claim cannot remedy the defects.").

### D. Individual Defendants

Throughout their Motion, Defendants argue that Plaintiffs have not adequately alleged their claims for fraud or conversion against Mel Denehan or Wallace. Dkt. No. 15-1 at 6-19. The Court disagrees as to Mel Denehan, but agrees as to Wallace.

Under New York law, "a corporate officer who participates in the commission of a tort may be held individually liable, . . . regardless of whether the corporate veil is pierced." *Fletcher v. Dakota, Inc.*, 948 N.Y.S.2d 263, 267 (N.Y. Sup. Ct. 2012). Thus, New York courts have consistently held that corporate officers and directors may be held liable for participating in tortious actions taken on behalf of the corporation. *See, e.g.*, *Key Bank of New York v. Grossi*, 642 N.Y.S.2d 403, 404 (N.Y. App. Div. 1996) (stating that "[c]orporate officers who commit or participate in the commission of a tort" can be held personally liable on the contracts of their corporations, "even if the commission or participation is for the corporation's benefit"); *Hempchain Farms, LLC v. Sack*, 516 F. Supp. 3d 197, 206 (N.D.N.Y. 2021) ("[C]orporate officers

---

[2] Additionally, in their submissions to the Court, Defendants do not dispute the existence or enforceability of the contract. *See* Dkt. No. 17 at 13.

and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally.") (citing *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 55 (N.Y. 2001)); *Fashions Outlet of Am., Inc. v. Maharaj*, No. 88 Civ. 7231 (PNL), 1991 WL 143421, at *5 (S.D.N.Y. July 22, 1991) ("A corporate officer or employee who participates in a conversion in the course of his employment may be held personally liable for his acts, notwithstanding innocent intent.").

Additionally, in the context of officer liability, "where concrete facts are peculiarly within the knowledge of the party charged with fraud, it would work a potentially unnecessary injustice to dismiss a case at an early stage where any pleading deficiency might be cured later in the proceedings." *Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486, 491-92 (N.Y. 2008) (citations and internal quotation marks omitted).

### 1. Defendant Mel Denehan

Here, Plaintiffs allege that Mel Denehan is the Chairman and Managing Director of Denehan, and Defendants do not dispute that Mel Denehan is a corporate officer.  Dkt. No. 1 at ¶ 11; *see* Dkt. Nos. 15-1, 17.  Plaintiffs also plausibly allege facts showing that Mel Denehan held some degree of corporate control because they allege that he bound Denehan to a contract via countersignature and signed an assurance letter sent on behalf of Denehan.  Dkt. No. 1 at ¶¶ 20, 24; *see City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 163 (S.D.N.Y. 2010) ("[I]t is well-established that under New York law, piercing the corporate veil is not required to hold a corporate officer liable for his company's torts: a corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation.") (citation and internal quotation marks omitted).

13

Furthermore, the Court finds that Plaintiffs have adequately pled strong circumstantial evidence that Mel Denehan engaged in conscious misbehavior based on the alleged phone call in which he admitted that Denehan had not used the deposit money as a deposit for Plaintiff's Purchase Order with Honeywell, but for other uses pursuant to Denehan's own "financial difficulties." Dkt. No. 1 at ¶ 28. Also, viewed in the light most favorable to Plaintiff, Plaintiffs' allegations regarding the phone call plausibly show that Mel Denehan exercised dominion over the money in violation of Plaintiffs' rights. *See, e.g.*, *Key Bank*, 642 N.Y.S.2d at 405 (holding corporate officers personally liable because they "exercised dominion and control over [the money] in such a manner that [the money was] used to pay customers or creditors of [defendant corporation] other than plaintiff"). Thus, the Court declines to dismiss Mel Denehan at this stage.

## 2. Defendant Wallace

As to Wallace, however, the Court finds that the Complaint fails to plausibly allege that he participated in any wrongful action related to Plaintiffs' claims. First, Plaintiffs allege that Wallace was a General Manager at Denehan but do not allege any other facts showing that he was involved in the day-to-day operations of Denehan or held a role involving corporate control. Dkt. No. 1 at ¶ 12; *see Trustco Bank New York v. S/N Precision Enters. Inc.*, 650 N.Y.S.2d 846, 850 (N.Y. App. Div. 1996) (granting summary judgment to defendant corporate secretary on corporate fraud claim because plaintiff "failed to set forth any proof raising a question of material fact as to her capacity as a corporate officer"); *cf. Polonetsky*, 97 N.Y.2d at 55 (holding defendant corporate president individually liable on corporate fraud claim when complaint alleged that defendant participated in corporate operations "on a day-to-day basis and [was] actively involved in its marketing and sales activities").

Second, as to Wallace's participation in the alleged wrongful acts, Plaintiffs merely allege that Wallace was copied on the emails sent by Mel Denehan on April 16, 2024, and August 23, 2024, and that Wallace notarized the assurance letters signed by Mel Denehan and sent on behalf of Denehan on August 7, 2024. Dkt. No. 1 at ¶¶ 20, 24, 26. The Court finds that these allegations do not adequately allege that Wallace personally participated in any act constituting fraud or conversion on behalf of himself or the corporation. *See, e.g.*, *Dragons 516 Ltd. v. Knights Genesis Inv. Ltd.*, No. 653187/2021, 2023 WL 140407, at *13 (N.Y. Sup. Ct. Jan. 6, 2023) (dismissing fraud and conversion claims against defendant because complaint only alleged that he notarized various documents and "a notary's acknowledgement is the verification of the fact of execution but not of the contents of the instrument") (citation and internal quotations omitted). Thus, the Court grants Defendants' Motion to dismiss as to Wallace.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss Plaintiffs' claims for common law fraud and conversion against Denehan is **DENIED**; and the Court further

**ORDERS** that Defendants' Motion to Dismiss Plaintiffs' claims for common law fraud, conversion against Mel Denehan is **DENIED**; and the Court further

**ORDERS** that V&V's claim for unjust enrichment against all Defendants be **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiffs' claims for common law fraud and conversion against Wallace be **DISMISSED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 10, 2026
        Albany, New York

Anne M. Nardacci
U.S. District Judge